## REDUCTION OF WIFE'S PROPERTY TO POSSESSION.

Circuit Court of Hamilton County.

ELLA A. MILLER, EXECUTRIX OF SAMUEL MILLS, v. WM. C. McLEAN, ADMINISTRATOR OF SUSAN B. MILLS.*

Decided, November 14, 1908.

*Husband and Wife—Reduction of Wife's Property into Possession of Husband—Assent of Wife—Declarations—Stale Equity or Laches with Reference to Right of Recovery—Presumptions—Payment of Wife's Debts—Gifts—Voluntary Payments—Newly-Discovered Evidence—New Trial—Sections 5242-6, 5307, 5309, 58 O. L., 54, and 68 O. L., 48.*

1. The doctrine of stale equity or laches does not apply to an action at law governed by the statute of limitations, which does not begin to run during coverture.

2. Where a husband appropriates notes and money belonging to his wife to his own use, and during the remainder of his life covering a period of nearly thirty years renders no account to her as to either principal or interest, and she requested none but repeatedly said there was but one pocketbook in the family, and after his

---

* Reversing *McLean, Admr.*, v. *Miller, Excrx.*, 5 N. P.—N. S., 57.

death she elected to take under his will, which disposed of all property standing in his name without acknowledging any indebtedness to her, and the declaration was made by her that all her property had been given to him to dispose of as he saw fit, there is a clear reduction of the wife's property by the husband into his possession.

3. In an action by the administrator of the wife's estate to recover from the estate of the husband property which thus passed into his possession, it is error after final submission of the case to refuse to hear new evidence discovered by chance which is not cumulative, but relates to payment by the husband of debts of his wife, and is proffered as a new defense.

4. The presumption that, where the debt of a wife is paid by her husband with his own money, a gift is intended, does not apply where the debt was to a firm of which the husband was a member, and was a balance due for the construction of a building on a lot owned by the wife, which was soon afterward sold and the proceeds retained by the husband until his death.

5. But while such evidence, if uncontradicted, would necessitate a different judgment, it is not error to refuse to grant a new trial, where the application therefor was not made by motion under Section 5307, or by petition under Section 5309.

*Healy, Ferris & McAvoy,* for plaintiff in error.
*William C. McLean* and *Edward Barton,* contra.

GIFFEN, J.; SWING, P. J., and SMITH, J., concur.

A statement of the case may be found in 5 N. P.—N. S., 57.

If the evidence offered by the plaintiff in the original action is insufficient to show that Samuel Mills took possession of all the proceeds of sale of his wife's real estate, her admissions offered by the defendant make the proof complete even as to the $2,500 cash payment. It is plain also from all the evidence that she consented to such possession; but the chief question is whether he reduced the property into his possession with her assent within the meaning of the act of 1861 (58 O. L., 54) as to $20,500 and the act of 1871 (68 O. L., 48) as to $6,000 of the sum sued for.

The evidence clearly shows that the husband intended and did appropriate the notes and money of the wife to his own use. During the remainder of his life, a period of nearly thirty years,

he rendered no account to her of the principal or the interest, and she requested none; but on the contrary repeatedly said that there was only one pocket-book in the family, and after his death she elected to take under a will which purported to dispose of all the property standing in his name without acknowledging any indebtedness to or claim in favor of her, and at the same time she declared that her property had been "given over to Mr. Mills and he should dispose of it as he felt like; that she was satisfied." This declaration was not an attempt to dispose of her property at that time, nor merely a ratification of the acts of her husband, but was a statement of a past transaction whereby she had made a gift of her property to him. It was made when the subject under consideration was her property and property rights—when the influence and restraint, if any, of her husband were removed, and was a frank and natural explanation of the conduct of both of them with reference to her property, which could not have been explained in any other way without reflecting on the honesty and fidelity of her husband.

While it is true that Judge Ferris, who was present, does not recall this declaration, yet it does not affirmatively appear that he was in a position to hear everything that was said. He was there for the purpose of obtaining her election under the will of her husband, and was not concerned with other matters discussed. It appears also that he recalls a declaration that the witness Catherine Lynskey does not, although she did remember a like declaration made by Mrs. Mills at other times, to-wit, "There was only one pocket-book." This failure of the two witnesses to recollect all that was said on that day is not unusual, but rather to be expected.

The declarations of Mr. Mills "I have money of your aunt's to invest" and "This is your aunt's money" relate to no particular sum and were made many years prior to that of Mrs. Mills. While they could apply at the time to a part of the fund in controversy, yet they would cease to apply if Mrs. Mills subsequently assented to a reduction into possession of such fund by her husband, and that is the effect of her declaration. The

very term "reduction into possession" implies an initiative on the part of the husband and the assent, if given, is a subsequent act of the wife either expressed or implied. It seems clear to us that Mrs. Mills gave her express assent that her husband might use the fund in his possession for his own benefit.

The doctrine of stale equity or laches does not apply, the action being one at law and governed by the statute of limitations which did not begin running during coverture.

The refusal to open up the case after final submission to hear newly discovered evidence material to the defense which could not with reasonable diligence have been obtained before, is also a ground of error. The proposed evidence so far as it relates to payment by Samuel Mills of his wife's debts was not cumulative, but was an entirely new and distinct kind of evidence directed to a different defense. The circumstances of the discovery are such that it may fairly be said that the evidence could not with reasonable diligence have been sooner discovered. It was the result of chance or good fortune, more than diligent search and inquiry.

It is claimed, however, that the evidence is inadmissible, because the presumption is that when a man pays the debt of his wife with his own money a gift is made, and numerous authorities are cited which hold that where the husband buys land, pays for it, and causes it to be conveyed to his wife, or expends his own money in the improvement of her property, the law, in absence of proof to the contrary, presumes it to be a gift. In all of these cases the payment or conveyance was wholly voluntary and naturally led to the conclusion that it was a gift.

The proposed evidence showed that the wife was largely indebted to the firm of Mills, Spellmire & Co., of which her husband was a member, for a balance due for the construction of a building on one of the lots in question—that he paid such debt or a part thereof; that a short time thereafter the premises were sold, and that the proceeds of sale came into his possession and were retained until his death. While there was no legal liability imposed on him to pay the debt, it was not a mere voluntary pay-

ment intended to enhance the value of her property, but to preserve that which she had, and when he took possession of the proceeds of sale, ever after retaining them, the presumption of a gift is rebutted, or at least a reduction into possession with her assent is shown, to the extent of the debt paid. Counsel for defendant in error insists that Samuel Mills, almost from the date of his marriage, assumed control and management of his wife's estate and became her trustee or agent; but he seems to deny him the right to credit himself with payments made in the interest of the trust and while acting as such trustee or agent. The same rule that required him to account for all money received as agent or trustee allowed him a credit for all payments, made in that capacity. The cash book of Mills, Spellmire & Co. was competent evidence under Section 5242, Sub. 6, Revised Statutes, of payment by Samuel Mills of his wife's debt to the firm or other creditors.

The entry in his diary purporting to be the result of an examination of his account as shown by the books of Mills, Spellmire & Co., some of which had since been destroyed by fire, and being against interest when made, was admissible as evidence of payment or assumption of payment of his wife's debt.

The evidence offered, if uncontradicted, would have required a different judgment; but as the application was not made by motion for a new trial under Section 5307, Revised Statutes, nor by petition under Section 5309, Revised Statutes, there was no error in overruling the same.

The judgment, being manifestly against the weight of the evidence, is reversed and the cause remanded for a new trial.